# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANTWON CORDERREL POWELL,

        Plaintiff,

v.

CHAPLAIN KAREN KONRAD,

        Defendant.

Case No. 20-CV-951-JPS

**ORDER**

**1.    INTRODUCTION**

On January 27, 2021, District Court Judge Lynn Adelman screened Plaintiff Antwon Corderrel Powell's ("Plaintiff") complaint and allowed him to proceed on claims arising under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Defendant Chaplain Karen Konrad ("Defendant"). (Docket #8). The case was reassigned to this branch of the Court on February 17, 2021. Since then, the parties have filed a series of motions including two for summary judgment and multiple related to discovery and amending and/or supplementing the complaint. This Order resolves all pending motions in this case.

**2.    LEGAL STANDARDS**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, a court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 3. RELEVANT FACTS

Plaintiff asserts that he has been a follower of Islam for ten years and is a "firm believer in the Islamic ways and practices." (Docket #1 at 2). He has been incarcerated at Brown County Jail (the "Jail") for over two years. (*Id.*) Plaintiff complains that Defendant has prevented him from practicing his religion. (*Id.* at 3). According to Plaintiff, in 2019, Defendant prevented him from receiving bagged meals during Ramadan, a time when Muslims are to abstain from eating or drinking when the sun is up. (*Id.*) Specifically, it appears that the Jail removed Plaintiff from its Religious Diet Program (the "Program") based on a recommendation by Defendant, the Jail's chaplain. (Docket #49 at 2). Although he could buy food at the commissary, Plaintiff writes that he was unable to buy enough food to meet his nutritional needs and lost a lot of weight, felt nauseous, and suffered tremendous hunger pains. (Docket #1 at 3–5).

Plaintiff explains that he filed a grievance asking why he was unable to receive bagged meals to eat when the sun was down. (*Id.* at 3–4). Another prison official told Plaintiff that he had violated Rules 7 and 8 of the Program. (*Id.* at 3). Rule 7 informs prisoners that they are not permitted to make menu choices on a meal-to-meal basis, and Rule 8 informs prisoners

that violation of the restrictions may result in removal from the Program. (Docket #1-1 at 1). In 2020, Plaintiff again requested to receive bagged meals during Ramadan. (Docket #1 at 3). The Jail denied his request, explaining that, because Plaintiff had been removed from the Program the previous year, he could not participate again during the same period of incarceration. (*Id.*) Defendant states that she recommended that Plaintiff be removed from the Program because he made several unapproved food purchases during Ramadan, including cocoa mix packets, a mayonnaise packet, and Cheetos. (Docket #49 at 4).

Defendant states that, in 2021, the Jail instated a "second chance" diet program, which allows an inmate to participate in the Program despite having been previously removed. (Docket #49 at 5). Pursuant to the Jail's second chance program, Plaintiff was allowed to participate in Ramadan 2021. (*Id.* at 6). Plaintiff, however, refused the Ramadan meals, indicated that he never asked for them, and asked to be taken off the diet. (*Id.*)

4.  ANALYSIS

    4.1  **Defendant's Motion for Partial Summary Judgment (Docket #20)**

Defendant's motion for partial summary judgment challenges whether Plaintiff exhausted his administrative remedies as to the inmate grievance he filed in 2019. (Docket #20). Defendant seeks summary judgment on any claims that arise out of the 2019 decision. (Docket #21 at 1).

The Prison Litigation Reform Act (the "PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). A prisoner must do so precisely in accordance with the rules of

the incarcerating institution; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, providing the parties opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

The Brown County Jail Inmate Handbook (the "Handbook") requires that inmates file written grievances within 48 hours of an incident. (Docket #24-1 at 10). The grievance will be reviewed by prison officials, and a prison official will respond to it. (*Id.*) An inmate has the right to one appeal of the prison's response, and the inmate must submit such appeal within 48 hours of receipt of the response. (*Id.* at 10–11). A staff member who has an equal or higher rank than the staff member from whom the inmate received the response will handle the appeal. (*Id.*)

Here, both parties agree that Plaintiff received a copy of the Handbook, that the Handbook explains the grievance process, and that Plaintiff filed his grievance within 24 hours of the alleged incident. (Docket #21 at 4, #33 at 2). Both parties also agree that Plaintiff did not appeal the 2019 decision. (Docket #21 at 2, #33 at 3). But Plaintiff argues that the Handbook expressly disallowed him from doing so. (Docket #33 at 2–3). Specifically, Plaintiff quotes the following section of the Handbook: "**Grievances on facility schedules, facility security measures, cell**

**assignments, pod assignments, and jail discipline will not be accepted.**" (Docket #24-1 at 10) (emphasis in original).

Plaintiff's grievance concerned his removal from the Program because Defendant believed that Plaintiff had violated Rules 7 and 8 of the Program. Defendant concedes as much. (Docket #21 at 2). In Plaintiff's words, "rule infraction plus punishment equals discipline." (Docket #33 at 2). Based on his reading of the Handbook's bolded exception to the grievance process, Plaintiff believed that he was not permitted to file a grievance for his removal from the Program. (*Id.*)

Certainly, it gives the Court pause that, despite his reading of the Handbook, Plaintiff still filed a grievance in 2019. However, Plaintiff states that this grievance concerned him not being supplied with "any factual basis" on which the decision rested. (Docket #34 at 2). He wanted a *reason* for the decision, but it appears that he always understood the Handbook to disallow a grievance and appeal of the 2019 decision itself. Plaintiff's reading of the Handbook's bolded section as it applied to his situation appears reasonable. However, in light of its analysis in Section 4.2, *infra*, the Court need not reach an answer on this issue.

### 4.2 Defendant's Motion for Summary Judgment (Docket #47)

Defendant moves for summary judgment on four grounds, which the Court will address in turn. Plaintiff failed to respond to Defendant's motion, and, because of Plaintiff's failure to comply with local rules about responding to motions, Defendant argues that the Court should grant what would be essentially default summary judgment. The Court cannot do this.

A plaintiff's "failure to file a timely response to [a motion for summary judgment] is not a basis for automatically granting summary judgment as some kind of sanction." *Robinson v. Waterman*, 1 F.4th 480, 483

Page 5 of 16
Case 2:20-cv-00951-JPS   Filed 11/16/21   Page 5 of 16   Document 58

(7th Cir. 2021). "Even where a nonmovant fails to respond to a motion for summary judgment, the movant still had to show that summary judgment was proper given the undisputed facts . . . with those facts taken as usual in the light most favorable to the nonmovant." *Id.* (quotation and citation omitted). Thus, the Court may treat Defendant's statement of facts as undisputed (although in a light most favorable to Plaintiff), but it must engage in legal analysis of Defendant's motion. *Id.*

### 4.2.1 Whether Defendant Acted Under Color of State Law

In order to prevail on a § 1983 claim, a plaintiff must show that the defendant (1) deprived him of a federal constitutional right (2) while acting under color of state law. *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). Defendant argues that she cannot be liable under § 1983 because she did not act under color of state law.

First, Defendant argues that she did not "act" against Plaintiff. Defendant states that she did not have the authority to make a decision against Plaintiff and that a supervising corporal "typically" asks for her advice and then makes an ultimate decision. (Docket #49). Defendant's use of the word "typically" raises flags for the Court—and a lack of an explicit statement of what *actually* happened in the present case does no better. In her proposed finding of facts, Defendant states that "[a]s a result of [Plaintiff]'s extraneous meal purchases, [Plaintiff] was removed from the Ramadan meal plan." (Docket #49 at 4). Defendant cannot use the passive voice as a tool to obfuscate her involvement in the Jail's decision making. Defendant has not told the Court what happened; at the very least, all parties agree that Plaintiff "was removed" from the Program based on and because of Defendant's recommendation. Defendant previously and continuously stated that "[Defendant] found that, based on her

understanding, [Plaintiff] was violating Rules #7 and #8 of the Religious Diet Program." (Docket #22 at 2; *see also* Docket #21 at 2, #48 at 3).

Second, Defendant argues that, as a chaplain, she cannot be considered a state actor. Defendant cites unhelpful and inapposite case law to support this position. For example, Defendant cites *Rodriguez v. Plymouth Ambulance Service* that, in relevant part, states, "[the Supreme Court] ha[s] held that 'a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" 577 F.3d 816, 824 (7th Cir. 2009) (discussing *Polk County v. Dodson*, 454 U.S. 312 (1981)). In a footnote to this sentence (and separately cited by Defendant), the Seventh Circuit noted that "the Court of Appeals for the Eighth Circuit applied the Supreme Court's decision in [*Polk*] to the ecclesiastical activities of a prison chaplain." *Id.* at 824 n.12 (citing *Montano v. Hedgepeth*, 120 F.3d 844, 851 (8th Cir. 1997)). This reference in a footnote is not the Seventh Circuit adopting the rule stated in *Montano*, and, even if it were, *Montano* limited the rule to situations wherein a chaplain "engages in inherently ecclesiastical functions (that is, when he performs spiritual duties as a leader in his church)." 120 F.3d at 851. Defendant cites no case law—and the Court will not go looking for it on Defendant's behalf—but it is unlikely that making recommendations on whether an inmate violated a prison rule and should face repercussions for it falls under "spiritual leadership."[1] Defendant's arguments on this issue fail.

---

[1]Defendant also cites *Larry v. Goetz*, 575 F. Supp. 2d 965, 968 (W.D. Wis. 2007), wherein a district court held that "plaintiff ha[d] adduced no admissible evidence from which a jury could infer that defendant[, a chaplain,] had either a responsibility or the authority to arrange Jumah services at the jail and defendant ha[d] submitted evidence that he had no such authority." *Larry* is also

#### 4.2.2 First Amendment

Defendant moves for summary judgment on the merits of Plaintiff's First Amendment claim for several reasons. The Free Exercise Clause of the First Amendment "prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotations and citation omitted). A person's religious belief must be sincerely held for the First Amendment's protections to attach. *See Vinning-El v. Evans*, 657 F.3d 591, 593 (7th Cir. 2011) ("Sincere religious beliefs must be accommodated . . . but non-religious beliefs need not be.").

In the prison context, although an inmate has the right to practice his religion during incarceration, this right may be restricted. "[A] regulation that impinges on an inmate's constitutional rights, such as one imposing a 'substantial burden' on free exercise, may be justified if it is 'reasonably related to legitimate penological interests.'" *Kaufman*, 733 F.3d at 696 (quoting *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987)). "A substantial burden 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 717–18 (1981)).

First, Defendant argues that Plaintiff did not sincerely hold the beliefs of a practicing Muslim. As evidence, Defendant states that (1) in 2018, Powell did not attempt to participate in Ramadan until after it had already begun, (2) Powell made purchases from the jail canteen that were prohibited by the Program (e.g., Cheetos, hot cocoa, and ramen), and (3)

---

distinguishable as it involved a *failure* to act and a lack of evidence that there was a duty to do so. In the present case, Plaintiff alleges that Defendant *took* action against him.

when he was added back into the Program in 2021, he asked to be removed. (Docket #48 at 11). These facts are not enough to show that Plaintiff did not sincerely hold his religious beliefs.

To begin, Plaintiff's late entry into the Program in 2018 does not mean that his faith was insincere—he may have been attempting to observe the practice on his own but later concluded that it would be easier to participate in the Program. Neither party discusses this, and the Court will not assume. Second, a person's failure to follow a prison's interpretation of a religious diet does not mean that the person failed to follow the actual religious diet. The Court is unaware of proscriptions against Cheetos and hot cocoa during Ramadan (just against eating between sunrise and sunset—which Defendant does not allege Plaintiff did). Third, we do not know why Plaintiff opted out of the program in 2021; perhaps he did so because he felt he could better observe Ramadan without the Jail's help. The mere assertion of a religious belief does not automatically trigger First Amendment protection; but Defendant has not presented the Court enough evidence that Plaintiff's beliefs were insincere.

Second, Defendant argues that Plaintiff's religious rights were not substantially burdened when he was removed from the Program. Defendant writes that "[a]t no point did employees of the Jail state that Plaintiff could not continue to participate in Ramadan prayer (or other Muslim services) while at the Jail." (Docket #48 at 11). They also state that Plaintiff's only gripe is that "he was often hungry during Ramadan." (*Id.*) In his complaint, Plaintiff states much more than that. He alleges that, without access to the meals provided through the Program, he did not have enough money to purchase full meals. (Docket #1 at 4). He states that he lost "a large amount of weight" and suffered nausea. (*Id.* at 4–5). Having

endured weeks of this, Plaintiff likened the experience to starvation. (*Id.* at 5). Courts "have observed that 'forcing an inmate to choose between daily nutrition and religious practice is a substantial burden.'" *See Thompson v. Bukowski*, 812 F. App'x 360, 365 (7th Cir. 2020), reh'g denied (July 2, 2020) (quoting *Holm*, 809 F.3d at 380). Defendant loses on this argument.[2]

Third, Defendant argues that Plaintiff's removal from the Program for violating its rules was a punishment reasonably related to legitimate penological interests. "To ensure that courts afford appropriate deference to prison officials . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349 (citations omitted). Thus, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). A court must consider four factors in assessing whether a prison regulation is reasonably related to a legitimate penological interest: (1) "whether the regulation is rationally related to a legitimate and neutral governmental objective;" (2) "whether there are alternative means of exercising the right that remain open to the inmate;" (3) "what impact an accommodation of the asserted right will have on guards and other inmates;" and (4) "whether there are obvious alternatives to the regulation that show that it is an exaggerated response to prison concerns." *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004).

---

[2] Additionally, this section of Defendant's motion is void of any case law—on-point or otherwise—to guide the Court's analysis of whether her stated facts support her argument.

Page 10 of 16
Case 2:20-cv-00951-JPS   Filed 11/16/21   Page 10 of 16   Document 58

As to the first factor, "the government interests of controlling costs and managing the budget . . . and a streamlined meal plan system are legitimate government objectives." *Crawford v. Bukowski*, No. 10-CV-2242, 2013 WL 363923, at *7 (C.D. Ill. Jan. 30, 2013) (citing *Koger v. Bryan*, 523 F.3d 789, 800 (7th Cir. 2008)) ("orderly administration of a prison dietary system, and the accommodations made thereunder, are legitimate concerns of prison officials"); *Al–Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991) (noting that both security and economic concerns are legitimate penological demands); *see also Akbar v. Overbo*, No. 17-CV-442-SLC, 2019 WL 6699743, at *8 (W.D. Wis. Dec. 9, 2019), appeal dismissed, No. 19-3492, 2020 WL 3412697 (7th Cir. Feb. 5, 2020) ("DOC's interest in orderly, efficient, cost-effective, and safe food service is undoubtedly legitimate."). Defendant makes this argument and offers supporting case law, and the Court agrees that this factor weighs in Defendant's favor.

As to the third factor, the Jail's rules are meant to prevent other inmates from "potentially abusing a system that causes the Jail an additional economic strain." (Docket #48 at 13). The rules are clear to inmates and promote order. *See Crawford*, 2013 WL 363923, at *8 ("As this court is required to be deferential toward prison officials' evaluation of their own security needs, [the third] factor weighs in favor of Defendants.").

As to the second and fourth factors, despite recognizing them, (Docket #48 at 8–9), Defendant does not directly address or support them with appropriate case law. However, as Defendant discusses, it is Plaintiff's burden to show that the alleged violation of his rights was not reasonably related to a legitimate penological interest. *Tatum v. Meisner*, No. 13-CV-44-WMC, 2016 WL 323682, at *11 (W.D. Wis. Jan. 26, 2016) ("Under [a] First Amendment claim . . . the burden not only remains with [the plaintiff], but

he must demonstrate that the burden on his rights is not reasonably related to a legitimate penological interest.") (citations and quotations omitted); *Allah v. Jordan-Luster*, No. 04-1083, 2007 WL 2582199, at *7 (C.D. Ill. Aug. 3, 2007) ("The inmate has the burden of disproving the validity of a challenged prison regulation . . . . Within the state penal system context, federal courts accord deference to the decisions of prison administrators.") (citations omitted).

Defendant has given the Court sufficient undisputed factual basis and law on which to find a legitimate penological interest for removing Plaintiff from the Program. *See, e.g.*, *Tatum v. Meisner*, No. 13-CV-44-WMC, 2016 WL 323682, at *11 (W.D. Wis. Jan. 26, 2016) (discussing only factor one) ("As set forth in the findings of facts, plaintiff has failed to offer sufficient evidence to create a genuine issue of material fact that the denial of his . . . [religious] diet . . . was not reasonably related to a legitimate interest of administrative ease, including controlling costs, offering straightforward diets that can be consistently prepared by less than skilled staff, and satisfying nutritional needs, food preferences and religious beliefs of a large, diverse prison population."). Plaintiff has not shown that his removal from the Program was not reasonably related to a legitimate penological interest. On this basis, Defendant is entitled to judgment as a matter of law on Plaintiff's First Amendment claim.

### 4.2.3 RLUIPA

Defendant moves for summary judgment on the merits of Plaintiff's RLUIPA claim for several reasons. RLUIPA prohibits prisons that receive federal funds from imposing a "substantial burden" on an inmate's religious exercise unless the government can demonstrate "that imposition of the burden on that person (1) is in furtherance of a compelling

governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc–5(7)(A). But "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (citing *Burwell v. Hobby Lobby*, 573 U.S. 682, 717, n.28 (2014)). RLUIPA offers broader protections than the First Amendment. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). It applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc–5(4).

Defendant make similar arguments to those she offers under the First Amendment analysis: (1) Plaintiff does not have a sincerely held religious belief; (2) Defendant's actions did not substantially burden Plaintiff's religious practice; and (3) the Jail's rule regarding the Program (i.e., the one that requires removing an inmate from the Program for violating a rule) is the least restrictive means of furthering a compelling government interest. In addressing these arguments, however, it came to the Court's attention that Plaintiff's RLUIPA claim may not present a live case or controversy.

"Only prospective relief is available under RLUIPA. A plaintiff may obtain an injunction or a declaration but not money damages." *Henderson v. Jess*, No. 18-CV-680-JDP, 2021 WL 1080269, at *5 (W.D. Wis. Mar. 19, 2021) (citing *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012)). While the cases on mootness under RLUIPA typically arise where an inmate has been transferred to a different institution or released from incarceration, *see, e.g.*, *Bradford v. Kramer*, No. 15-CV-1405-MJR-SCW, 2017 WL 2373441, at *2 (S.D.

Ill. Apr. 27, 2017), report and recommendation adopted, No. 15-CV-01405-JPG-SCW, 2017 WL 2361153 (S.D. Ill. May 31, 2017); *Henderson*, 2021 WL 1080269, at *5, they may apply in the present case. Defendant states that Plaintiff has been given a "second chance" to participate in the Program and that he refused this opportunity in 2021. (Docket #49 at 5–6). Certainly, there are defenses to a mootness challenge to the Court's jurisdiction (e.g., the "capable of repetition yet evading review" doctrine), but, at this juncture, the Court will say no more on the matter.

The parties are instructed to brief the Court on whether Plaintiff's RLUIPA is moot. Defendant's brief shall be due to the Court by December 14, 2021; Plaintiff shall respond within 30 days of Defendant's brief; and Defendant shall reply within 14 days of Plaintiff's response. Defendant is encouraged to also re-brief (in the alternative) her summary-judgment arguments on the merits of Plaintiff's RLUIPA claim, as she did in the present motion. Defendant should file her initial brief as a motion.

**5.     Motions to Supplement and Amend**

Plaintiff submitted a series of motions to either amend or supplement his complaint. (Docket #35, #43, #52). Plaintiff does not get to clear out the motions and pleadings before the Court and begin afresh, carte blanche, because the docket has become "complicated." (Docket #52 at 1). This case—filed in June 2020—has been screened, discovery has proceeded, and dispositive motions have been briefed. Pro se litigants are given some flexibility but may not respond to a meritorious motion for summary judgment with a request to replead their case. The Court will deny Plaintiff's motions.

### 6. DISCOVERY MOTIONS

On June 24, 2021, Plaintiff filed a motion to stay discovery, (Docket #37), and, on July 26, 2021, he filed a motion to compel discovery, (Docket #39). Given that the Court is granting summary judgment to Defendant on Plaintiff's First Amendment claim, ordering additional jurisdictional briefing on his RLUIPA claim, and denying his motions to amend and supplement his complaint, the Court will deny Plaintiff's discovery-related motions as moot.

### 7. CONCLUSION

For the reasons explained above, the Court will deny Defendant's motion for partial summary judgment for Plaintiff's failure to exhaust. (Docket #20). The Court will grant, in part, Defendant's motion for summary judgment, (Docket #47), as to Plaintiff's First Amendment claim. The Court will deny, without prejudice, this motion as to Plaintiff's RLUIPA claim and order the parties to brief the Court on whether the claim in moot. The Court will deny Plaintiff's motions to amend and supplement his complaint. (Docket #35, #43, #52). Finally, the Court will deny as moot Plaintiff's motion to stay discovery, (Docket #37), and his motion to compel, (Docket #39).

Accordingly,

**IT IS ORDERED** that Defendant's motion for partial summary judgment (Docket #20) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Docket #47) be and the same is hereby **GRANTED in part** as to Plaintiff's First Amendment claim and **DENIED without prejudice** as to Plaintiff's RLUIPA claim;

**IT IS FURTHER ORDERED** that the parties are to brief the Court on mootness as follows: Defendant's brief shall be due to the Court by December 14, 2021; Plaintiff shall respond within 30 days of Defendant's brief; and Defendant shall reply within 14 days of Plaintiff's response. Defendant is encouraged to also re-brief (in the alternative) her summary-judgment arguments on the merits of Plaintiff's RLUIPA claim, as she did in the present motion. Defendant should file her initial brief as a motion.

**IT IS FURTHER ORDERED** that Plaintiff's motions to either amend or supplement his complaint (Docket #35, #43, #52) be and the same are hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion to stay discovery (Docket #37) and motion to compel (Docket #39) be and the same are hereby **DENIED as moot.**

Dated at Milwaukee, Wisconsin, this 16th day of November, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge